IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

BROTHERHOOD OF MAINTENANCE )
OF WAY EMPLOYES, DIVISION, IBT )
)
)
                      *Plaintiff,* )
)
)
v. )
                                                        ) Civil Action No. 8:20-cv-52
UNION PACIFIC RAILROAD, CO. )
)
                     *Defendant.* )
)

## PETITION FOR ENFORCEMENT OF ARBITRATION AWARD

The Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED" or "Union") petitions this Court for an Order enforcing an arbitration award ("Award") issued by a Railway Labor Act ("RLA") arbitration board in a dispute between BMWED and the Union Pacific Railroad Company ("UP" or "Carrier"). A copy of the Award is attached to this petition, marked as Exhibit 1 and incorporated herein by this reference.

UP discharged one of BMWED's members. BMWED filed a "claim" or grievance on his behalf. The claim asserted that the action violated the parties' collective bargaining agreement. As a remedy, BMWED asked that its member be "immediately returned to service, have all mention of the charges and discipline removed from his personal record, provided with all lost compensation (i.e. straight time, overtime, holiday pay, vacation pay and hours and mileage for

1

attending his investigation) and afforded all other rights and benefits contemplated by Rule 22."

The Public Law Board sustained the claim by its Award dated March 28, 2019. The Award stated: "Claim sustained. In accordance with Rule 22, this includes straight time, vacation, ***health and welfare benefits and railroad retirement***. The Carrier is ordered to make the Award favorable to the Claimant effective on or before 30 days following the date below." (emphasis added).

BMWED's member Melvin F. Woolridge (the "Claimant") was reinstated by UP, but he was not made whole for his losses as required by the Award because UP did not comply with the Award as issued. UP unilaterally reduced Mr. Woolridge's compensation for his financial losses, and imposed costs on him, even though his claim that he had been improperly discharged was sustained, and UP was directed to make him whole for his financial losses. BMWED seeks enforcement of the Award under Section 3 First (p) of the RLA, 45 U.S.C. §153 First (p).

## PARTIES

1. BMWED is an unincorporated labor association that maintains its headquarters in Novi, Michigan. BMWED is the duly designated representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of employees of UP working in the class or craft of maintenance of way employee, including UP maintenance of way employees who live and work in this District. On January 1, 2005, the BMWED became an autonomous division of the International Brotherhood of Teamsters. Prior to that date, BMWED was an international union founded in 1887 that went by the name Brotherhood of Maintenance of Way Employes.

2

2. UP is a rail carrier as that term is defined in Section 1 First of the RLA. UP conducts rail operations in many states in the midwest, south and west, including in Nebraska.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of this petition pursuant to 28 U.S.C. §§ 1331 and 1337, §§ 2201 and 2202; and 45 U.S.C. § 153 First (p).

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) and (c), and 45 U.S.C. §153 First(p) because UP owns and operates lines of railroad within this District and is headquartered in this District.

## STATEMENT OF THE CLAIM

5. On July 6, 2017, UP removed maintenance of way employee Melvin F. Woolridge from employment with the Carrier.

6. BMWED filed a claim (grievance) on behalf of Mr. Woolridge. The grievance asserted that the discharge was improper and in violation of the BMWED-UP collective bargaining agreement ("CBA"). For a remedy, BMWED asserted that Mr. Woolridge must be "immediately returned to service, have all mention of the charges and discipline removed from his personal record, provided with all lost compensation (i.e. straight time, overtime, holiday pay, vacation pay and hours and mileage for attending his investigation) and afforded all other rights and benefits contemplated by Rule 22."

7. After handling of the claim under the CBA was completed, the claim was referred to Public Law Board No. 7633 ("PLB"), which was established under Section 3 Second of the Railway Labor Act ("RLA"), 45 U.S.C. §153 Second, to resolve claims and grievances that cannot be resolved by BMWED and UP. The Arbitrator and Neutral member of the Board was arbitrator Robert Grey.

8. On March 28. 2019, the PLB issued its Award in which it sustained the claim which was restated at the beginning of the Award.

9. The Award stated: "Claim sustained. In accordance with Rule 22, this includes straight time, vacation, **health and welfare benefits and railroad retirement**. The Carrier is ordered to make the Award favorable to the Claimant effective on or before 30 days following the date below." (emphasis added).

10. While UP reinstated Mr. Woolridge, the Carrier also unilaterally reduced his compensation for his financial losses in ways not provided for in the Award, and imposed costs on him, even though the PLB sustained his claim and ordered UP to make him whole for his financial losses. By doing so, UP arrogated to itself the ability to modify the Award and refused to compensate Mr. Woolridge for all his losses that were specified in the claim which was sustained by the PLB.

11. In addition to wages, UP employees receive health insurance coverage paid for by the Carrier with employees paying a portion of the premiums.

12. Under the Railroad Employees National Health & Welfare Plan ("National Plan"), when an employee is reinstated after discharge, coverage is deemed retroactively applied and premiums for that period of coverage are due.

13. Railroad employees are covered by the Railroad Retirement Act of 1974 (45 U.S.C. § 231 *et seq.*) ("RRRA"). Carriers and employees pay Railroad Retirement taxes for employee coverage under the RRRA.

14. When an employee is reinstated after discharge, the employee is credited for RRRA service time for the period when they were wrongfully out of service. Accordingly, payroll taxes are assessed for accrual of RRRA service time.

15. The portion of the premiums for the National Plan and RRRA taxes that railroad employees are responsible for are not directly paid by employees. Instead, the money is withheld from employee paychecks by the Carrier.

16. In calculating the amount due to Mr. Woolridge pursuant to the Award, UP reduced the amount of compensation due to Mr. Woolridge by the amount of his outside non-UP earnings during the period he was discharged.

17. In accordance with the RRRA, UP made payments to the Railroad Retirement Board ("RRRB") for the employer's share of taxes for service credit for the period Mr. Woolridge was discharged.

18. In accordance with the National Plan, UP made payments to the National Plan for the employer's share of health insurance coverage for Mr. Woolridge for the period he was discharged.

19. For the employee's share, UP deviated from its practice with payments for other employees returned to work. Historically, the Carrier pays employee health care contributions and railroad retirement coverage out of the backpay due from UP before calculating the impact of outside earnings. Instead, in this case, the Carrier reduced its backpay obligation to Mr.

Woolridge by the amount of Mr. Woolridge's outside earnings and then assessed him for the health care contributions and railroad retirement payments. The remainder of the backpay obligation after the offset for outside earnings was substantially lower than the employee contribution for health insurance and RRRA.

20. Mr. Woolridge also received Railroad Unemployment Insurance during the period he was discharged and was obligated to reimburse the RRRB for the unemployment benefits he received. UP did not take that amount out of the back pay due to Mr. Woolridge and instead left that obligation to him after offsetting the back pay due him by the amount of his earnings while improperly discharged.

21. As a result, rather than compensating Mr. Woolridge for his losses, UP unilaterally eliminated its financial obligation to Mr. Woolridge and is requiring him to contribute to the health plan and the Railroad Retirement Board out of his own funds – effectively converting an obligation of UP into an obligation of Mr. Woolridge. By prevailing in arbitration, Mr. Woolridge is being assessed a loss whereas UP has no make whole obligation – only payments of the employer's share of health insurance and RRRA contributions for the period of Mr. Woolridge's discharge. The total amount UP would require Mr. Woolridge to pay was $8,328.76.

22. BMWED has written to the UP's Director of Labor Relations asserting that UP's action was contrary to the Award because the Award expressly provided for Mr. Woolridge's reinstatement and that Mr. Woolridge would be compensated for all losses suffered as a result of the violation including "health and welfare benefits and railroad retirement" and did not set any other terms or limitations on his reinstatement.

23. The Carrier has refused to comply with the Award.

24. A neutral arbitrator found that UP had wrongly discharged Mr. Woolridge and ordered UP to make him whole for all losses. UP's response to that order was to compel Mr. Woolridge to pay $8,328.76 in order to return to work.

25. Additionally, the Carrier did not comply with the requirement in the Award that "Carrier is ordered to make the Award favorable to the Claimant effective *on or before 30 days* following the date below." (emphasis added).

26. UP unduly delayed Mr. Woolridge in establishing an appointment for his return to work physical and in granting him access to the Carrier's computer system in order to update his Computer Based Training and Department of Transportation ("DOT") qualifications. Both are prerequisites for Mr. Woolridge to return to work and delaying Mr. Woolridge from being able to complete these requirements kept him from returning to service for the period from April 25, 2019 through June 9, 2019.

27. BMWED has calculated that the total amount of backpay owed to Mr. Woolridge is $8,328.76 as well as straight time, overtime, holiday pay, vacation pay for the period from April 25, 2019 through June 9, 2019.

## CAUSE OF ACTION

28. BMWED repeats and realleges herein the allegations contained in paragraphs 1-27 above.

29. Section 3 First (p) of the RLA, 45 U.S.C. § 153 First (p) provides that "[i]f a carrier does not comply with an order of" an arbitration panel under Section 3, a union may seek enforcement of the award in Federal District Court.

30. UP has failed and refused to comply with the Award because the Carrier unilaterally reduced Mr. Woolridge compensation for his financial losses in ways not provided for in the Award; and UP has ignored the Award's requirement that Mr. Woolridge be made whole for his losses including "straight time, vacation, health and welfare benefits and railroad retirement."

31. Because UP has failed to comply with Board's Order, BMWED is entitled to an order enforcing the Award, directing compliance with the Award in accordance with Section 3 First (p) of the RLA, 45 U.S.C. § 153 First (p), and requiring UP to pay the Union's attorneys fees in accordance with Section 3 First(p).

## REQUEST FOR RELIEF

WHEREFORE, BMWED respectfully requests that the Court:

A. Declare that UP did not comply with the Award because it unilaterally reduced Mr. Woolridge's compensation for his financial losses, and imposed costs on him, even though his claim that he had been improperly discharged was sustained, and UP was directed to make him whole for his financial losses;

B. Declare that BMWED is entitled to enforcement of the Award in accordance with Section 3 First (p) of the Railway Labor Act, 45 U.S.C. § 153 First (p);

C. Enforce the Award and direct UP to comply with the Award;

D. Grant BMWED such other and further legal and equitable relief that the Court deems just and proper; and

E. Grant BMWED its attorneys' fees and costs of this action.

## REQUEST FOR PLACE OF TRIAL

The Plaintiff requests trial to be held at Omaha, Nebraska.

Respectfully submitted,

/s/ Richard S. Edelman
Richard S. Edelman
Aaron S. Edelman
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street NW, Suite 400
Washington, DC 20036
(202) 783-0010
Redelman@MooneyGreen.com

/s/Robert E. O'Connor, Jr.
Robert E. O'Connor, Jr.
P.O. Box 451116
Omaha, NE 68145
(402) 330-5906
Reolaw@aol.com

Counsel for the Brotherhood of Maintenance of Way Employes Division/IBT

February 2, 2020

PUBLIC LAW BOARD NO. 7633

Brotherhood of Maintenance
of Way Employes Division - IBT

and

Union Pacific Railroad
(Former Missouri Pacific Railroad)

Case No. 107
Award No. 107

STATEMENT OF CLAIM: "Claim of the System Committee of the Brotherhood that:

1. The Carrier's discipline (dismissal) of Mr. M. Woolridge, by letter dated July 6, 2017, for alleged violation of Rule 1.6: Conduct - Negligent, Rule 42.2.2: Other Speed Requirements and Rule 1.13: Reporting and Complying with Instructions was unwarranted, arbitrary and in violation of the Agreement (System File UP526JF17/1690511D MPR).

2. As a consequence of the violation referred to in Part 1 above, Claimant M. Woolridge shall be immediately returned to service, have all mention of the charges and discipline removed from his personal record, provided with all lost compensation (i.e., straight time, overtime, holiday pay, vacation pay and hours and mileage for attending his investigation) and afforded all other rights and benefits contemplated by Rule 22."

FINDINGS:

Public Law Board No. 7633, upon the whole record and all the evidence, finds the parties involved in this dispute are respectively Carrier and Employees within the meaning of the Railway Labor Act, as amended; this Board has jurisdiction of the dispute herein; the parties were given due notice of hearing before this Board and they participated therein.

The Claimant was disciplined pursuant to a Notice of Investigation dated June 14, 2017, Investigation held June 28, 2017, "... to develop the facts and determine your responsibility, if any, in connection with the below charge. On 06/01/2017, at the location of Flatonia, TX, near Milepost 120.0, Glidden Subdivision, at approximately 05:40 hours, while employed as a M/O (Br) Bal Reg, you allegedly were negligent when you failed to control the set of machines you were responsible for, resulting in an on track collision. This is a possible violation of the

Page 1 of 3

EXHIBIT 1

PLB No. 7633
Award No. 107

following rule(s) and/or policy: 1.6: Conduct – Negligent; 42.2.2: Other Speed Requirements; 1.13: Reporting and Complying with Instructions. Additionally, **Rule 1.6: Conduct** stipulates that any act of hostility, misconduct, or willful disregard or negligence affecting the interest of the company or its employees is cause for dismissal and must be reported. Indifference to duty or to the performance of duty will not be tolerated. Under the MAPS Policy, this violation is a Dismissal event. Based upon your current status, if you are found to be in violation of this alleged charge, Dismissal may result."

In a discipline letter dated July 6, 2017, the Carrier found that "... the evidence more than substantially supports the charges against you. The following charge has been sustained: On 06/01/2017, while employed as a M/O (Br) Bal Reg, you were negligent when you failed to control the set of machines you were responsible for, resulting in an on track collision. This is a violation of the following rule(s) and/or policy: 1.6: Conduct – Negligent; 42.2.2: Other Speed Requirements; 1.13: Reporting and Complying with Instructions. Additionally, **Rule 1.6: Conduct** stipulates that any act of hostility, misconduct, or willful disregard or negligence affecting the interest of the company or its employees is cause for dismissal and must be reported. Indifference to duty or to the performance of duty will not be tolerated. Based on your current record, you are hereby dismissed from all service with the Union Pacific Railroad."

The Organization appealed the discipline and the Carrier denied the appeals. The dispute was not resolved during a settlement conference and progressed to arbitration. This matter is now before the Board for final and binding resolution. The Board has carefully reviewed the entire record in this case, including the arguments and awards provided in support of the parties' respective positions, whether or not specifically addressed herein.

The Board finds that there is not substantial evidence in the record to uphold the Carrier's determination of culpability.

<u>AWARD</u>:

PLB No. 7633
Award No. 107

Claim sustained. In accordance with Rule 22, this includes straight time, vacation, health and welfare benefits and railroad retirement. The Carrier is ordered to make the Award favorable to the Claimant effective on or before 30 days following the date below.

Robert Grey
Neutral Member
Dated: March 28, 2019

Katheirne Novak
Carrier Member

Andrew Mulford - 3/28/19
Organization Member